IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

KRISTI MARIE WOMACK                            PLAINTIFF

       v.                     CIVIL NO. 14-3090

CAROLYN W. COLVIN, Acting Commissioner
Social Security Administration                          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Kristi Womack, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I. Procedural Background**

Plaintiff protectively filed her applications for DIB and SSI on February 8, 2012, alleging disability since June 1, 2011, due to diabetes, depression, post-traumatic stress disorder (PTSD), anxiety, neuropathy, carpal tunnel syndrome (CTS), a pinched nerve, joint pain, asthma, chronic bronchitis, and a learning problem. (Tr. 13, 217). For DIB purposes, Plaintiff retained insured status through September 30, 2013. (Tr. 15). An administrative hearing was held on March 6, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 35-71).

By a written decision dated July 15, 2013, the ALJ determined Plaintiff's hypertension, diabetes mellitus type I with peripheral neuropathy, asthma, degenerative disc disease of the

cervical spine, depression, and PTSD were severe impairments. (Tr. 15). After reviewing all of the evidence presented, the ALJ determined Plaintiff's impairments did not meet or equal the level of severity of any impairment in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 16-17). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work with the following limitations:

> [T]he claimant must work in a controlled environment where they [sic] are not exposed to temperature extremes, dusts, fumes or smoke in concentrated amounts. She is able to perform jobs with simple tasks and simple instructions and can have incidental contact with the public.

(Tr. 17).

With the help of a vocational expert (VE), the ALJ found Plaintiff could not perform her past relevant work (PRW), but could perform the requirements of the representative occupations of housekeeper and machine tender. (Tr. 26-27). The ALJ concluded Plaintiff was not disabled as defined by the Act during the relevant time period. (Tr. 28).

Plaintiff next requested a review of the hearing decision by the Appeals Council, which denied the request on August 4, 2014. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). The parties consented to the jurisdiction of this Court on October 15, 2014. (Doc. 6). Both parties have filed appeal briefs, and the case is ready for decision. (Docs. 9, 11).

## II. Applicable Law

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.

**III. Discussion**

Plaintiff argues the ALJ erred in assigning little weight to the opinions of her treating physicians, and did not properly consider her GAF scores. (Doc. 9, pp. 1-2).

**A. Credibility**

The ALJ was required to consider all of the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id.

The ALJ addressed the Polaski factors in the written decision, and found Plaintiff's subjective complaints only partially credible because the medical evidence showed Plaintiff's pain improved with medication and conservative treatment, she performed relatively normal daily activities, and she worked after the alleged onset date. (Tr. 19-21, 26). These were valid reasons for the ALJ to partially discount Plaintiff's subjective complaints. See e.g. Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2014).

The record as a whole confirms the ALJ's assessment of Plaintiff's credibility. Notably, Plaintiff refused a referral for pain management in March of 2012, and told Dr. Roy Sampson, her rheumatologist, that "gabapentin definitely helps her pain." (Tr. 413, 601). She reported further improvement after her gabapentin dose was increased in March of 2012. (Tr. 601, 609). She also reported to Dr. Terry Efird, a consulting psychologist, that she was able to perform household chores and normal daily activities. (Tr. 417, 419).

Accordingly, the undersigned finds the ALJ's credibility analysis is based on substantial evidence.

**B. RFC Assessment**

RFC is the most a person can do despite that person's limitations, and is assessed using all relevant evidence in the record. 20 C.F.R. §404.1545(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393. F.3d 798, 801; Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §404.1545(a)(3). A claimant's RFC is a medical question, therefore, an ALJ's determination concerning a claimant's RFC must be supported by some medical evidence that addresses the claimant's ability to function in the workplace. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). Even though the RFC assessment draws from medical sources, it is ultimately an administrative determination. 20 C.F.R. §§ 416.927(e)(2), 416.946; Cox v. Astrue, 495 F.3d 614 (8th Cir. 2007). In evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively, but should "consider at least some supporting evidence from a professional." Lauer, 245 F.3d at 704.

Plaintiff's treatment notes indicate she suffered from several conditions, including asthma, diabetes, diabetic neuropathy, anxiety, and depression. Plaintiff shared that she worked as a security guard until February 2012, could perform most daily activities with breaks, regularly walked for exercise, occasionally went fishing, and could follow short and simple instructions, although she had problems handling stress and changes in routine. (Tr. 52-53, 175-181, 245).

Exam notes from 2011 show Plaintiff was treated for asthma, diabetes, chest pain, and hypertension. Plaintiff underwent a stress test in May of 2011 and a Spirometry study in June of 2011, which were normal. (Tr. 291, 383). In December of 2011, Plaintiff denied back and chest pain, and an exam showed she had normal range of motion in her back and extremities. (Tr. 306-307, 373). Plaintiff was provided a work restriction note dated December 13, 2011, which stated she should not be exposed to cold air, dust, or respiratory irritants due to her asthma. (Tr. 367).

Plaintiff established care at the Boston Mountain Rural Health Center in January of 2012. Notes show she "ha[d] been off some meds for a while," and she was diagnosed with diabetes mellitus, hyperlipidemia, anxiety, depression, and joint pain. (Tr. 396-397). Plaintiff was prescribed medication to control her lipids, blood sugar, and hypertension, as well as, Zoloft for depression and Klonopin for anxiety. (Tr. 397).

Plaintiff was examined by Dr. Efird on February 8, 2012. (Tr. 416-420). She reported good results without side effects on Zoloft and Klonopin, and endorsed an ability to perform her daily activities. (Tr. 416-417). Dr. Efird diagnosed Plaintiff with depressive disorder and assigned a GAF of 50-60. (Tr. 418-419). According to Dr. Efird, Plaintiff communicated adequately and could perform, persist, and complete work-like tasks within an acceptable time frame. (Tr. 419).

At a follow-up in March of 2012, at the Boston Mountain clinic, Plaintiff declined a referral to a pain physician, and a ProAir inhaler was prescribed. (Tr. 411-413). Her next exam in April of 2012 was normal, and notes show she had started a daily walking program, and stopped going to counseling. (Tr. 421-426).

Plaintiff was examined by Dr. Shannon Brownfield, a consulting physician, on May 21, 2012. (Tr. 451-455). Plaintiff had full range of motion in all areas, and could perform all functions on the exam. (Tr. 452-455). X-rays of her spine showed mild lordosis and degenerative disc disease. (Tr. 455). According to Dr. Brownfield, Plaintiff could perform moderate to prolonged standing and walking, and prolonged activity. (Tr. 455). On May 23, 2012, Dr. Dan Gardner, a non-examining consultant, completed a Physical RFC Assessment, and opined Plaintiff could perform light work without additional limitations. (Tr. 460-466). Dr. Jim Takach affirmed Dr. Gardner's assessment on October 2, 2012. (Tr. 504).

Plaintiff returned to the Boston Mountain clinic in October of 2012, and reported she had stopped taking Zoloft because of nausea, but complained of neuropathy in her legs and uncontrolled blood sugars. (Tr. 512-515). She was prescribed metformin and niacin, and instructed to follow a diabetic diet. (Tr. 512-513). At a follow-up in January of 2013, Plaintiff shared that "Neurontin helps [her] neuropathy but her bones still hurt," and she stated Zoloft was ineffective. (Tr. 566). She was prescribed Byetta injections for her diabetes, and referred to a rheumatologist. (Tr. 566). In February of 2013, Plaintiff was doing well on Byetta, and she underwent an MRI of her cervical spine, which showed minimal bulging at the L4-L5 and L5-S1 levels and mild facet disease. (Tr. 561-563).

Plaintiff established care with Dr. Sampson, a rheumatologist, in February of 2013. Dr. Sampson determined Plaintiff had 5/5 muscle strength, and good range of motion in her wrists, elbows, knees, hips, ankles, hands, and feet. (Tr. 601-604). Dr. Sampson, however, noted Plaintiff had a mildly decreased range of motion in her left shoulder, tenderness in her spine, and 18/18 fibromyalgia trigger points. (Tr. 603-604). He recommended she exercise, increased Plaintiff's Neurontin, and discussed trying a steroid injection for Plaintiff's left shoulder. (Tr. 604).

Plaintiff established care with Dr. Rebecca Barrett at a different Boston Mountain clinic location in March of 2013, who continued Plaintiff's medications and prescribed Effexor for depression. (Tr. 587-590). Dr. Barrett noted Plaintiff's MRI of her spine showed bulging discs, and a nerve conduction study showed only very mild CTS. (Tr. 594).

Dr. Barrett submitted a Medical Source Statement dated March 25, 2013, and reported she could not assess Plaintiff's functional limitations. (Tr. 583-586). She stated, "I have not seen [patient] long enough to tell." (Tr. 584). She anticipated Plaintiff would have some limitations, but wrote that she was not sure for most questions. (Tr. 584-586).

In April of 2013, Plaintiff underwent a MRI of her left shoulder, which ruled out a rotator cuff tear, and showed only possible impingement and tendinosis. (Tr. 637). At a follow-up in July of 2013, with Dr. Barrett, Plaintiff complained of increased anxiety and depression due to family issues, and left shoulder pain. (Tr. 633). Dr. Barrett noted Plaintiff's blood sugars were in the expected range, but recommended stopping Byetta and starting insulin. (Tr. 633-634).

At a follow-up in April of 2013, with Dr. Sampson, Plaintiff reported her back only occasionally hurt, and she considered her left shoulder pain to be her worst problem. (Tr. 609).

According to Dr. Sampson, a higher Neurontin dose reduced Plaintiff's pain, her blood sugar levels were much better, and "she [was] overall doing better compared to last visit." (Tr. 609).

Plaintiff was also treated at Ozark Guidance beginning in February of 2012. In her intake evaluation with Deborah Clay, a licensed professional counselor, Plaintiff reported daily stress and depression, and was diagnosed with chronic moderate to severe PTSD and assigned a GAF score of 52. (Tr. 399-404). Plaintiff had several more sessions in February of 2012, where she discussed family stressors. Treatment notes show Plaintiff made progress, and had a good prognosis with overcoming her PTSD, but Ms. Clay remarked Plaintiff's "anxiety level [was] still high due to 'family drama.'" (Tr. 405, 528-529, 530). Ms. Clay also determined Plaintiff did not meet the criteria for a serious emotional disturbance or serious mental illness. (Tr. 523-524).

On May 2, 2012, Dr. Kevin Santulli, a non-examining consultant, submitted a Mental RFC Assessment, and opined Plaintiff had no marked impairments in adaptive functioning and could perform unskilled work. (Tr. 435).

At a follow-up in August of 2012, Ms. Clay noted Plaintiff's depression had improved, her response to counseling was positive, and she was displaying intelligence and insight into her issues. (Tr. 546-547). In September of 2012, Ms. Clay noted Plaintiff had made progress on overcoming her anxiety that allowed performing her daily activities, and increased Plaintiff's GAF score to 54, although she noted Plaintiff had stopped taking her Zoloft due to nausea. (Tr. 542-545).

On September 26, 2012, Dr. Brad Williams, a non-examining consultant, affirmed Dr. Santulli's opinion that Plaintiff could perform unskilled work. (Tr. 498).

In January of 2013, Ms. Clay noted Plaintiff's depression and anxiety had increased due to situational family problems, and recommended an antidepressant be prescribed. (Tr. 552-553). Ms. Clay submitted a Medical Source Statement on March 5, 2013, which stated Plaintiff's current GAF score was 48, and opined Plaintiff could not meet competitive standards or had no useful ability to function in nearly every category of adaptive functioning. (Tr. 578-582). She concluded that Plaintiff's "limitations would prevent [her] from being able to work any job at all." (Tr. 582).

In April of 2013, Plaintiff discussed her anxiety about family problems and her disability application, and Ms. Clay noted Plaintiff continued to make some progress, but needed continued therapy. (Tr. 623-627). Ms. Clay also increased Plaintiff's GAF score to 59. (Tr. 623, 626).

According to Ms. Clay, Plaintiff experienced a setback in June of 2013, after being shot at with a firearm, but her GAF score remained 59. (Tr. 630-631). In August of 2013, Plaintiff had her final visit with Ms. Clay, who noted Plaintiff's symptoms of PTSD had shown improvement before recently becoming worse because of family stressors. (Tr. 616).

Plaintiff began meeting with Veronica Combs, a licensed social worker at Ozark Guidance, in June of 2013, who noted Plaintiff had experienced recent family stressors, and assigned a GAF score of 59. (Tr. 628-629). In August of 2013, at Plaintiff's most recent visit, Ms. Combs noted Plaintiff had an appropriate appearance, judgment, and thought processes, although her mood was depressed and anxious. (Tr. 619). She assigned a daily living activities score of 44.5, and noted Plaintiff was motivated for treatment and had good treatment results in the past. (Tr. 620-621).

In the written decision, the ALJ gave significant weight to Dr. Brownfield, Dr. Efird, and the non-examining, consulting psychologists' opinions, but discounted the non-examining, consultants' physical RFC opinions since they did not account for environmental limitations. (Tr.

22-24). The ALJ also discounted Dr. Barrett's opinions because the limitations she suggested did not match her treatment notes, and "Dr. Barrett was unable to assess limitations or specify limitations as she had just started treating the claimant." (Tr. 23).

The ALJ also assigned little weight to Ms. Clay's opinions because the extreme limitations she suggested were not supported by her treatment notes. (Tr. 24-25). As the ALJ noted, Plaintiff made progress while in counseling, even though recent treatment notes show her symptoms were exacerbated by situational family stress. (Tr. 25). The ALJ appropriately concluded Ms. Clay's opinions were entitled to little weight since they were inconsistent with her treatment notes. See Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). The ALJ's conclusion that Plaintiff's anxiety and depression were not disabling, in spite of Ms. Clay's opinions, was appropriate, particularly since Ms. Clay was not an acceptable medical source, and Plaintiff's counseling notes indicated her symptoms were situational and related to family stressors. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006); see also Dunahoo v. Apfel, 241 F.3d 1033, 1040 (8th Cir. 2001) (stating the plaintiff's treatment notes supported the ALJ's conclusion that her depression was situational since it was due to the denial of food stamps and workers compensation).

As for Plaintiff's GAF scores, the ALJ addressed her results, which indicated moderate symptoms, and appropriately noted the scores were useful in tracking the effectiveness of mental health treatment, but were not a reliable measure of functional ability. (Tr. 22). In general, an ALJ is not required to address Plaintiff's GAF scores, let alone grant them controlling weight. See Jones v. Astrue, 619 F.3d 963, 973 (8th Cir. 2010); see also Howard v. Com'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) (stating the failure to reference a GAF score, standing alone, does not make the RFC inaccurate).

In addition to analyzing the medical opinions, the ALJ highlighted evidence showing Plaintiff's conditions responded to treatment and did not cause disabling limitations. The RFC assessment is supported by Plaintiff's treatment notes, and consistent with the opinions of the consultative examiners and the non-examining consultants' mental RFC assessments.

Accordingly, the undersigned finds the ALJ's RFC determination is based on substantial evidence.

**C. Step Five**

At the hearing, the ALJ posed a hypothetical question consistent with the RFC assessment to the VE. (Tr. 67-68). In response, the VE testified Plaintiff could perform the representative occupations of housekeeper and machine tender. (Tr. 27, 68). Such testimony, based on a hypothetical question consistent with the record, constitutes substantial evidence. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).

Based on the foregoing, the undersigned finds the ALJ's step five determination is supported by substantial evidence.

**IV. Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. Plaintiff's Complaint is dismissed with prejudice.

Dated this 2nd day of October, 2015.

s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE